UNITED STATES of America, Plaintiff–Appellee,

v.

James M. FEJES, Defendant–Appellant.

No. 99–30144.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 2, 2000

Filed Nov. 14, 2000

Evelyn S. Ying and Andrew C. Mergen, Department of Justice, Washington, District of Columbia, for the plaintiff-appellee.

Before: GOODWIN, ALARCON, and McKEOWN, Circuit Judges.

ALARCON, Circuit Judge:

James M. Fejes appeals from the judgment entered following his felony convictions for conspiracy to violate the Lacey Act under 18 U.S.C. § 371, and two substantive violations of the Lacey Act under 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), and 18 U.S.C. § 2. The jury found that Fejes sold caribou in violation of the Lacey Act by providing guide services to two hunters that took the caribou in violation of Alaska law. Fejes contends that the district court erred by failing to instruct the jury that the illegal taking of the caribou must have preceded his sale of guide services in order for criminal liability to apply. We hold that a "sale" of wildlife for purposes of 16 U.S.C. § 3373(d)(1)(B) encompasses not only the agreement to provide guide or outfitting services, but also the actual provision of such services. We conclude that the district court properly instructed the jury, and thus affirm Fejes's convictions.

## I

Fejes was indicted along with three co-defendants in a three count indictment on October 22, 1998. The defendants were charged with conspiracy and two substantive violations of the Lacey Act. The indictment also alleged a forfeiture under 16 U.S.C. § 3374(a)(1)-(2).

Fejes is a licensed hunting guide in Alaska. In the summer of 1996, Fejes agreed to take two out-of-state hunters, Jon "Buck" McNeely and Michael Doyle,

Andrew M. Parnes, Ketchum, Idaho, for the defendant-appellant.

on a guided caribou hunt in Alaska. Doyle paid Fejes $3500 for the hunt when Doyle first arrived in Alaska on August 16, 1996. McNeely, who produces a syndicated "outdoorsman" television show, did not pay cash for the guided hunt, but agreed to give Fejes a 30–second advertising spot on McNeely's show in exchange for Fejes's services. McNeely estimated the value of the advertising spot to be approximately $2750.

On August 18, 1996, Fejes and his employees flew McNeely and Doyle to a remote "spike camp"[1] to hunt caribou. Also in the party were John Helgren, a videographer hired by McNeely to film the hunts, and Blaine Morgan, a licensed hunting guide employed by Fejes. After Fejes dropped off McNeely, Doyle, Helgren, and Morgan at the spike camp, Fejes flew off to another location. Shortly thereafter, Morgan guided McNeely, Doyle, and Helgren in pursuit of caribou. Doyle shot and killed a caribou, in violation of an Alaska regulation that prohibits hunting on the same day that a hunter is airborne. *See* Alaska Admin. Code tit. 5, § 92.085(8) (2000).[2]

The hunting party hiked back to the spike camp, where they met up with Fejes. Morgan immediately told Fejes about the caribou kill, and Fejes testified that he recognized that there was a "problem" because "same-day airborne is not legal." Fejes and his employees then flew the hunting party, along with meat and the antlers from Doyle's caribou, back to the base camp.

On August 20, 1996, Fejes piloted McNeely from the base camp to look for caribou from the air. Fejes and McNeely spotted a caribou, and Fejes landed the airplane nearby. Cameraman Helgren was in another airplane piloted by one of Fejes's employees which also landed at the site. A few minutes later, McNeely shot and killed a caribou that he and Fejes had spotted from the air. Fejes testified that McNeely was carrying a gun as he approached the caribou, but that he expected Helgren to film the caribou. He did not know that McNeely intended to kill it. Helgren testified, however, that Fejes told him that morning that "[w]e're going out to kill a caribou here today." Helgren also testified that Fejes congratulated McNeely for killing the caribou. Fejes and McNeely then posed for a photograph standing over the dead caribou, both with their thumbs up.

Morgan field-dressed the caribou, and Fejes and his employees flew the caribou meat back to base camp. Neither Fejes, McNeely, Doyle, nor any of Fejes's employees reported either of the illegal hunts to state authorities. Doyle and McNeely took caribou meat from their kills back to their home states. The Doyle and McNeely hunts were featured on McNeely's syndicated television program, which aired twice. An advertisement for Fejes's guide services was shown at the conclusion of both airings.

Prior to trial, Fejes's three codefendants pleaded guilty to misdemeanor violations of the Lacey Act. Fejes proceeded to trial. The jury convicted him of felony conspiracy to violate the Lacey Act and felony violations of the Lacey Act under 18 U.S.C. § 371, 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), and 18 U.S.C. § 2. The district court sentenced Fejes to serve six months and one day in prison, followed by two years of supervised release, and imposed a fine of $5000. Fejes filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

1. A spike camp is a temporary hunting camp erected in the field.

2. Section 92.085(8) provides that "a person who has been airborne may not take or assist in taking a big game animal until after 3:00 a.m. following the day in which the flying occurred[.]" Alaska law prohibits taking game unless permitted by Alaska statutes or regulations. *See* Alaska Stat. § 16.05.920(a) (1999).

## II

■ Fejes contends that the district court erred by failing to instruct the jury that the illegal taking of wildlife must precede the sale of guide services to fall within the criminal provisions of the Lacey Act. The district court instructed that to convict Fejes, the jury must find (1) that Fejes "knowingly engaged in conduct that involved a sale or purchase of the caribou," (2) that Fejes "knew that the caribou had been taken, possessed, transported or sold" in violation of law, (3) that the market value of the caribou exceeded $350, and (4) that Fejes "knowingly sold or transported the caribou in interstate commerce." Fejes objected to the court's instruction on the grounds that it incorrectly stated the elements required for criminal liability under the Lacey Act. We review de novo whether a jury instruction misstates elements of a statutory crime. *See, e.g., United States v. Frega,* 179 F.3d 793, 806 n. 16 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1247, 146 L.Ed.2d 105 (2000), *and cert. denied sub nom. Adams v. United States,* —— U.S. ——, 120 S.Ct. 1443, 146 L.Ed.2d 331 (2000).

The Lacey Act makes it unlawful to transport, sell, or purchase "in interstate or foreign commerce ... any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State...." 16 U.S.C. § 3372(a)(2)(A). A "sale" of wildlife includes the offer or provision of "guiding, outfitting, or other services ... for the illegal taking, acquiring, receiving, transporting, or possessing of fish or wildlife." 16 U.S.C. § 3372(c)(1). The Lacey Act imposes felony penalties if the defendant "knowingly" engages in conduct that involves the sale of wildlife "with a market value in excess of $350, knowing that the fish or wildlife or plants *were taken, possessed, transported, or sold in violation of ... any underlying law, treaty or regulation ....*" 16 U.S.C. § 3373(d)(1)(B) (emphasis added).

Fejes argues that we must reverse the judgment of conviction because McNeely and Doyle took caribou in violation of Alaska's same-day shooting ban *after* Fejes agreed to guide their hunts. Fejes contends that this interpretation is mandated both by a plain reading of the statute, and by *United States v. Romano,* 137 F.3d 677 (1st Cir.1998). The First Circuit held in *Romano* that "a hunter who purchases guiding or outfitting services to assist him in a *prospective* unlawful taking of wildlife can neither know nor have reason to know at the time of his purchase that the wildlife he has constructively purchased by operation of 16 U.S.C. § 3372(c) 'were taken' (or, for that matter, 'possessed' or 'transported') in violation of state law." *Id.* at 681. The *Romano* court reasoned that "Congress' use of the word 'were'[in the criminal statute] implies that, at the time of the purchase, the underlying taking, possession, or act of transport cannot still be in prospect; it must have already occurred." *Id.*

■ "In determining the scope of a statute, we look first to its language." *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246, (1981). "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *Id.* (citation omitted). We agree with the First Circuit that the plain language of 16 U.S.C. § 3373(d)(1)(B) limits the felony liability under that section to instances where a defendant knows that wildlife "were" illegally taken before he "sells" or "purchases" the wildlife.

■ This is not the end of our inquiry, however. We must also determine when a "sale" of wildlife is deemed complete for purposes of § 3373(d)(1)(B). The *Romano* court considered this issue in regards to a purchaser—not a seller like Fejes—and concluded that it is "obvious, or at least plausible, that Romano 'engag[ed] in' this [purchase] ... only for so long as it took him to consummate his purchases of ser-

vices." [3] 137 F.3d at 681 (citation omitted). We reject Fejes's contention that this definition of a "purchase" by a hunter controls our interpretation of a "sale" made by a guide or outfitter.

The Lacey Act defines a sale of wildlife to encompass the situation where "a person for money or other consideration to offer or *provide ... guiding, outfitting, or other services ... for the illegal taking* [of wildlife]." 16 U.S.C. § 3372(c)(1)(A) (emphasis added). The plain language of the statute indicates that the *provision* of guide services for the illegal taking of wildlife constitutes a sale, not merely making financial arrangements for such services. The legislative history of the 1988 amendment to the Lacey Act is in accord. The Senate Report indicates that the amendment was intended to make the "providing of guiding services used in the illegal taking of wildlife or the issuance of illegal hunting or fishing licenses .... subject to the enforcement provisions of the Lacey Act." S.Rep. No. 100–563, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5366, 5370. Similarly, the House Report on the 1988 amendment states that the purpose of 16 U.S.C. § 3372(c) is to render "the providing of guiding, outfitting, and transportation services ... used in the illegal taking, acquiring, receiving, transporting, or possessing of fish or wildlife" subject to the felony enforcement provisions of the Lacey Act. H.R.Rep. No. 100–732, at 12 (1988). Thus, both the plain language of the statute and the legislative history indicate that the provision of guiding or outfitting services for the illegal taking of game unambiguously falls within the criminal enforcement provisions of the Lacey Act.

Moreover, Fejes's proposed construction would lead to absurd results. For example, if we were to construe the word "sale" as suggested by Fejes, guides and outfitters would be immune from criminal liability even if they became aware before a hunt, but after financial arrangements were made, that their customers intended to take game illegally. We must reject this construction because nothing in the statute or its legislative history suggests that Congress intended such an absurd result. *See United States v. Rocha–Leon,* 187 F.3d 1157, 1159 n. 3 (9th Cir.1999) (stating that "interpretation that 'is consistent with the language of the statute and avoids absurd results' is preferred when 'nothing in the language or history' of the statute 'suggest[s] Congress intended the absurd results possible under [the other proposed] construction'") (quoting *United States v. Alfeche,* 942 F.2d 697, 698–99 (9th Cir.1991)) (alteration in original).

Accordingly, we hold that "sale" for purposes of 16 U.S.C. § 3373(d)(1)(B) includes both the agreement to receive consideration for guiding or outfitting services and the actual provision of such guiding or outfitting services.[4] Because we determine that the plain language of § 3373(d)(1)(B) is unambiguous, Fejes may not invoke the doctrine of lenity. We conclude that the district court did not erroneously instruct the jury on this issue.

### III

Fejes contends that the district court erred by instructing the jury that felony liability could be imposed for either the transportation or sale of wildlife taken in violation of state law. We review de novo Fejes's claim that the district court's instruction misstates elements of the statutory crime. *See Frega,* 179 F.3d at 806 n. 16.

██ In one of the jury instructions, the district court stated that the Lacey Act "makes it a crime to import, export, transport, sell, receive, acquire, *or* purchase wildlife" and that the jury could convict

---

**3.** *Romano* considered "purchase" as defined by 16 U.S.C. § 3372(c)(2), which mirrors "sale" as defined by 16 U.S.C. § 3372(c)(1).

**4.** We need not consider at this time whether "sale" and "purchase" as defined by 16 U.S.C. § 3372(c)(1)-(2) have similar temporal scope.

Fejes if he "committed an offense charged by only *one* of these means (for example, transport *or* sell)...."[5] Fejes argues that these statements improperly instructed the jury that they could substitute "transport" for "sale" as the overlying criminal conduct under 16 U.S.C. § 3373(d)(1)(B).[6] The district court properly instructed that to convict Fejes, the jury must find that he sold or purchased the caribou. The district court also properly instructed the jury that it must find an underlying violation of the Lacey Act, namely that Fejes knowingly sold or transported the caribou in interstate commerce. The language cited by Fejes properly instructs that the jury could find the underlying violation to be either the knowing sale or transportation of caribou in interstate commerce. Accordingly, we determine that the district court did not erroneously instruct the jury as to the elements of § 3373(d)(1)(B).

 Fejes also contends that the district court erred by failing to instruct that the jury must unanimously agree as to the method by which Fejes violated the Lacey Act. Because Fejes failed to request a unanimity instruction at trial, this claim is reviewed under the plain error standard. *See United States v. Bryan,* 868 F.2d 1032, 1038 (9th Cir.1989). The general rule is that the district court need not instruct the jury "that a single set of facts on a single theory of liability must be agreed upon." *United States v. Ferris,* 719 F.2d 1405, 1407 (9th Cir.1983). Fejes fails to demonstrate that the facts of this case are so complex as to require a special instruction. Thus, we conclude that the district court

did not commit plain error by failing to give a unanimity instruction.

## IV

 Fejes contends that the district court erred by refusing to instruct the jury that he was required by Alaska law to transport the caribou from the field. "[A] defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." *United States v. Duran,* 59 F.3d 938, 941 (9th Cir.1995) (quoting *United States v. Gomez–Osorio,* 957 F.2d 636, 642 (9th Cir. 1992) (quoting *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990))). If the parties dispute whether the required factual foundation exists, we review for abuse of discretion. *See id.* If the defendant's theory of defense is supported by the evidence, we review de novo whether the district court's instructions adequately cover it. *See id.*

 Alaska law provides that "a person may possess and transport game or parts of game taken in violation of [state law] *for the sole purpose of salvaging and surrendering that game* or parts of that game to a representative of the state...." Alaska Admin. Code tit. 5, § 92.140(d) (emphasis added); *accord* Alaska Admin. Code tit. 5, § 92.220(h) (stating that a person who takes game in violation of state laws or regulations shall "immediately transport [portions of the game] from the field directly to the nearest office of the Department of Fish and Game ... or the Department of Public Safety ... and shall

---

**5.** The district court's instruction ambiguously stated that the Lacey Act "makes it a crime to *import, export, transport, sell, receive, acquire, or* purchase wildlife...." The Lacey Act makes it *unlawful* to commit any of these acts, but requires a mens rea element to impose criminal penalties. *See* 16 U.S.C. §§ 3372(a)(2), 3373(d)(1)-(3). The district court properly instructed the jury on the elements of felony liability, however, and any ambiguity did not render the instructions as a whole "misleading or inadequate to guide the

jury's deliberation." *Frega,* 179 F.3d at 806, n. 16.

**6.** 16 U.S.C. § 3373(d)(1)(B) imposes felony penalties only if the defendant "knowingly engag[es] in conduct that involves the sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase, fish or wildlife or plants with a market value in excess of $350...." Transportation of wildlife could never be the sole overlying conduct for a felony under this provision.

surrender them to a department representative."). Neither Fejes nor others from his hunting party surrendered the illegally taken caribou to state representatives. Fejes testified that he transported the caribou back to base camp with the belief that McNeely would surrender the caribou to authorities. Fejes contends that the district court erred by not permitting the jury to consider whether he possessed the illegally taken caribou "for the sole purpose of salvaging and surrendering" it.

We must first determine whether Fejes's proposed instruction is supported by evidence in the record. To convict Fejes under § 3373(d)(1)(B) based on an underlying violation of § 3372(a)(2)(A), the jury had to find that he knowingly sold or transported the caribou in interstate commerce. The jury also had to find that Fejes knowingly engaged in conduct that involved a sale or purchase of the caribou. Thus, even if Fejes proved a complete defense to "transporting" the caribou, the jury necessarily found that he "sold" the caribou. The uncontested evidence offered at trial indicated that Fejes sold his guide services to two hunters that lived outside of Alaska. A primary purpose of that sale was that Fejes would help the hunters transport the meat and horns of the caribou from the field to their home states. Fejes and his employees accomplished this end by flying the meat and horns out of the field. Moreover, after the hunts had concluded, Fejes accepted nationwide television advertising of his business in exchange for his services. Fejes offered no evidence to support any reasonable conclusion other than that he sold the caribou in interstate commerce. *See United States v. Atkinson,* 966 F.2d 1270, 1275 (9th Cir.1992) (interstate commerce element satisfied if defendant "knew that [wildlife] would be transported in interstate commerce and took the steps that

began their travel to interstate markets") (quoting *United States v. Gay–Lord,* 799 F.2d 124, 126 (4th Cir.1986)) (alteration in original). We conclude that the district court did not abuse its discretion by refusing to give Fejes's proposed instruction because there was no foundation for the jury to find that the sale did not involve interstate commerce.[7]

## V

■ Fejes contends that the trial court erred in failing to instruct on lesser included misdemeanor violations of the Lacey Act. We analyze the district court's refusal to instruct on a lesser included offense using a two part test. First, "the defendant must prove that the offense on which instruction is sought is a lesser-included offense of that charged[.]" *United States v. Vaandering,* 50 F.3d 696, 703 (9th Cir. 1995) (quoting *United States v. Pedroni,* 958 F.2d 262, 267 (9th Cir.1992)). There is no dispute that misdemeanor violations of the Lacey Act are lesser-included offenses of the charged crimes. Second, "the defendant must show that the jury rationally could conclude that the defendant was guilty of the lesser-included offense but not of the greater." *Id.* (quoting *Pedroni,* 958 F.2d at 267–68). We review the second step of the inquiry for abuse of discretion. *See id.*

■ There are three substantive differences between a felony offense under § 3373(d)(1)(B) and a misdemeanor offense under § 3373(d)(2) of the Lacey Act. First, a felony requires proof that the defendant knew that wildlife was taken, possessed, transported, or sold in violation of state law. A misdemeanor only requires proof that the defendant should have known of the violation. Second, a felony requires proof that the defendant engaged in the sale or purchase of wildlife. Third, a felo-

---

7. Fejes's proposed instruction was also incorrect as a matter of law. The proposed instruction stated that the Government must prove that Fejes "did not possess [the caribou] with the purpose of salvaging and transporting the game to a representative of the state as required [by Alaska law]." However, the jury could convict Fejes if it found that Fejes *either* transported *or* sold the caribou in interstate commerce.

**704**

ny requires proof that the wildlife has a market value of at least $350. *See* 16 U.S.C. §§ 3373(d)(1)(B)-(d)(2). The district court addressed only one of the three differences, finding that "no reasonable jury could ... fail to come to the conclusion that ... this is either a ... knowing violation or isn't a violation at all." Fejes does not contest this finding, but argues that the district court's failure to consider the other differences constitutes an abuse of discretion.

It was undisputed at trial that Fejes sold his guiding services to McNeely and Doyle, and that those services were worth over $350. Because there was no evidence on which the jury could reasonably conclude that Fejes had not "sold" wildlife with a market value of at least $350, the district court did not abuse its discretion by declining to instruct on the lesser included offense.

■ Fejes also contends that the district court erred by instructing the jury that it could determine the market value of the caribou by considering the value of Fejes's guiding services. This argument fails because, where the commodity sold is the opportunity to hunt game with the assistance of a guide, the value of an animal "sold" for purposes of § 3372(c) "is best represented by the amount a hunter is willing to pay for the opportunity to participate in the hunt." *Atkinson,* 966 F.2d at 1273 (citing *United States v. Todd,* 735 F.2d 146, 152 (5th Cir.1984)).

### CONCLUSION

We hold that a "sale" of wildlife for purposes of 16 U.S.C. § 3373(d)(1)(B) encompasses both the agreement to receive consideration for guiding or outfitting services and the actual provision of such services. We reject Fejes's contention that the district court committed instructional error. Accordingly, the district court's judgment is AFFIRMED.