**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-50069 |
| Plaintiff - Appellee, | D.C. No. CR-05-00027-GAF-2 |
| v. | |
| DOUGLAS R. DOWIE, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-50072 |
| Plaintiff - Appellee, | D.C. No. CR-05-00027-GAF-1 |
| v. | |
| JOHN STODDER, Jr., | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted November 1, 2010
Pasadena, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: GOODWIN and RAWLINSON, Circuit Judges, and ZOUHARY, District Judge.[**]

Douglas R. Dowie and John Stodder, Jr. were found guilty by a jury of fraudulently inflating client bills during their employment with the public relations firm Fleishman-Hillard ("FH"). They appeal their convictions for conspiracy and wire fraud under 18 U.S.C. § 371 and § 1343, challenging multiple aspects of their trial. Dowie also appeals his sentence, while Stodder appeals the district court's denial of his request for post-conviction investigation funds. For the reasons that follow, we affirm appellants' convictions, Dowie's sentence, and the district court's denial of investigation funds. Because the parties are familiar with the facts and procedural history of the case, we do not recite them here except as necessary to our decision.

A.    **Sufficiency of the Evidence**

1.    **Evidence of Wire Fraud**

Appellants contend that the Government failed to present sufficient evidence to support their convictions for wire fraud, collectively pointing to three alleged gaps in the evidence presented at trial. First, Dowie argues that the Government failed to establish his specific intent to defraud because it did not present evidence showing he expressly directed the fraudulent increases made to client bills. *See United States v.*

---

[**]    The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

2

*Lothian*, 976 F.2d 1257, 1267 (9th Cir. 1992) ("To sustain a conviction under the mail and wire fraud statutes, there must be sufficient evidence to show that the defendant willfully participated in a scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved.") (internal quotation marks omitted); *see also* 18 U.S.C. § 1343.

The Government put forth significant evidence showing that Dowie instructed subordinates to increase the amounts billed to the Los Angeles County Department of Water and Power ("DWP") when he knew the only way to do so was by fraudulently increasing the number of hours worked. Further, the Goverment presented evidence indicating Dowie knew these fraudulent additions were being made to DWP bills. Taken together, this evidence was sufficient for a rational trier of fact to have found that Dowie participated in the scheme to increase the invoices to DWP and was aware of the fraudulent nature of these acts. *See United States v. Ciccone*, 219 F.3d 1078, 1084 (9th Cir. 2000) ("The government can establish knowledge of a fraudulent purpose by circumstantial evidence."); *Lothian*, 976 F.2d at 1262 ("The defendant need not personally have mailed the letter or made the telephone call; the offense may be established where one acts with the knowledge that the prohibited actions will follow in the ordinary course of business or where the prohibited acts can reasonably be foreseen").

Second, Appellants argue that the Government failed to show the wires were used in furtherance of the scheme. The established process used to prepare the fraudulent billing information, however, included emailing an Excel file containing the inflated numbers from FH's St. Louis office to its LA office. While it was not necessary that this information be transferred by email—rather than some other method—these wire transmissions were a regular step in the process used to prepare the fraudulent billing information presented to FH clients, which was undisputably an essential part of the fraud to convince these clients to overpay FH. Accordingly, there was sufficient evidence to find that the wires were used to further the fraudulent scheme. *See Pereira v. United States*, 347 U.S. 1, 8 (1954) (finding that it is sufficient if the wire transmission is "incident to an essential part of the scheme."); *United States v. Chung Lo*, 231 F.3d 471, 478 (9th Cir. 2000) ("Although a mailing [or wire transmission] must occur in the execution of the scheme – that is, as a 'step in [the] plot,' – the mailing [or transmission] need not be an essential element of the scheme.") (quoting *Schmuck v. United States*, 489 U.S. 705, 711 (1989) (internal citations omitted)).

Third, Stodder contends that the Government failed to prove he ever personally obtained money as a result of the fraud. This issue was not raised before the district court and is reviewed for plain error. *See United States v. Green*,

4

592 F.3d 1057, 1065 (9th Cir. 2010). A conviction for wire fraud requires the Government to prove the defendant had "a specific intent to defraud," not an intent to personally gain from the fraud. *See United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008); *United States v. Inzunza*, 580 F.3d 894, 904 (9th Cir. 2009) (citing *United States v. Welch*, 327 F.3d 1081, 1106 (10th Cir. 2003) ("No appellate court to our knowledge has ever held an intent to achieve personal gain is an element of a traditional mail or wire fraud charge involving the deprivation of property.")); *United States v. Stockheimer*, 157 F.3d 1082, 1087–88 (7th Cir. 1998) ("An intent to defraud does not turn on personal gain. . . . [A]ll that matters is that [defendant] intended to inflict a loss.") (internal citation omitted). Therefore, there is no basis to find plain error related to this claim.

### 2. Burden of Proof

Appellants also argue that the Government suggested at trial that all upward adjustments, or "write-ups," to client bills were necessarily fraudulent. Appellants contend this suggestion impermissibly shifted the burden of proof, requiring them to prove the legitimacy of every write-up. Due process places the burden on the Government to prove each element of a charged offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 362–63 (1970). When not raised at trial, a claim that the

5

prosecution impermissibly shifted the burden of proof is reviewed for plain error. *United States v. Mitchell*, 502 F.3d 931, 958 (9th Cir. 2007).

Appellants fail to identify any instruction or prosecution statement suggesting the defendants had to prove all write-ups were legitimate. To the contrary, the district court instructed the jury that they had to "agree[] on at least one particular false representation or statement which was made." There was substantial testimony from multiple witnesses that activity reports given to FH clients included fraudulent entries. Accordingly, there is no basis to find plain error related to this claim.

### 3. Variance of the Evidence from the Indictment

Dowie and Stodder argue that specific evidence presented by the Government at trial varied from the first superceding indictment, supporting either a constructive amendment of the indictment or a variance therefrom. *See United States v. Adamson*, 291 F.3d 606, 614–15 (9th Cir. 2002). The evidence at issue, however, failed to constructively amend, or vary from, the charges in the indictment.

Appellants first contend that the Government introduced evidence of multiple conspiracies, rather than the single conspiracy charged, because the evidence showed certain employees changed jobs over time and did not continually communicate with one another. In evaluating a variance defense based on alleged multiple conspiracies, this Court has found that "the question of whether a single conspiracy has been

6

proved, rather than multiple conspiracies . . . is essentially a question of the sufficiency of the evidence." *United States v. Bibbero*, 749 F.2d 581, 586 (9th Cir. 1984) (citations omitted). Although certain members changed, the nature of the scheme, its manner of operation, and Dowie's position as its primary leader remained the same throughout the conspiracy. Accordingly, there was sufficient evidence for a rational trier of fact to have found a single conspiracy. *See id.* at 587 ("The consistency of key personnel and of method and type of operation militates against the separation of [the] smuggling operation into smaller, independent conspiracies"); *United States v. Bloch*, 696 F.2d 1213, 1215 (9th Cir. 1982) (single conspiracy established by same scheme, same central actors, same activities and same goals), abrogated on other grounds by *United States v. Jimenez Recio*, 537 U.S. 270 (2003).

Next, Appellants argue that the Government introduced evidence related to Platinum Equity and Kajima, FH clients not named in the indictment. This evidence did not create a variance from the indictment, however, because the district court found the evidence relevant to specific aspects of the charged conspiracy. *See United States v. Atul Bhagat*, 436 F.3d 1140, 1146 (9th Cir. 2006) ("Evidence not referenced in the indictment may be admitted for . . . 'other legitimate purposes,' without effecting any changes to the indictment.") (quoting *United States v. Kahan & Lessin Co.*, 695 F.2d 1122, 1125 (9th Cir. 1982)). Further, the district court properly limited

7

the jury's consideration of the evidence, instructing that they could only find the defendants guilty of the conspiracy charged in the indictment and could only consider the Platinum Equity evidence in evaluating Dowie's state of mind. *See Kahan & Lessin Co.*, 695 F.2d at 1125 (finding "no fatal variance between the indictment and the evidence" when a proper limiting instruction was given).

## B. Evidentiary Rulings

### 1. Stodder's Cooperation with FH's Investigation

Stodder argues that the district court erred in excluding evidence of his post-conspiracy cooperation with FH's investigation, which might have supported his lack of intent to engage in a conspiracy and his defense of good faith. Although post-conspiracy evidence is admissible if it is probative of the existence of the conspiracy, *see United States v. Koppers Co., Inc.*, 652 F.2d 290, 298 (2d Cir. 1981), cert. denied, 454 U.S. 1083 (1981), a trial court has discretion under Federal Rule of Evidence 403 to exclude evidence where its probative value is outweighed by its potential to confuse the jury. *See United States v. Ross*, 372 F.3d 1097, 1113 (9th Cir. 2004). The district court found that potential testimony and exhibits regarding Stodder's post-conspiracy cooperation was of little probative value to his state of mind during the conspiracy. Further, the district court found the exhibits were likely to

confuse the jury as to the conspiracy period. The district court did not abuse its discretion in barring Stodder's post-conspiracy evidence on this basis.

### 2. Dowie's Polygraph Evidence

In the list of issues presented in Dowie's Amended Opening Brief, he identifies the district court's refusal to admit his offer to take a polygraph examination. Because neither his amended opening brief or reply makes an argument in support of this claim, the issue is waived. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir. 1996) (issues not specifically raised and argued in a party's opening brief are waived).

### C. Jury Instructions

### 1. Appellants' Proposed *Lew* Instruction

Relying on *United States v. Lew*, 875 F.2d 219 (9th Cir. 1989), Appellants requested a jury instruction that would have required the jury unanimously to find that the entity deceived by the defendants was the same entity from which money or property was sought, in order to support a guilty verdict. *See id.* at 221 (holding that to support a mail fraud conviction, "the intent must be to obtain money or property from the one who is deceived"). In seeking this instruction, Appellants argued that the wire fraud charges failed because the evidence showed FH was paid by the City of Los Angeles, a separate entity from the DWP, which was the deceived party.

9

The district court did not err in rejecting Appellants' proposed instruction because it has no support in the law or the evidence. *See United States v. Fejes*, 232 F.3d 696, 702 (9th Cir. 2000) ("[A] defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence."). All the relevant FH contracts were made with the DWP, and all the relevant invoices were sent to the DWP. Although the City Controller's Office apparently approved all DWP payments before they were made, there was no evidence indicating that Appellants sought to obtain money from the City, rather than from the DWP.

Further, the proposed instruction erroneously indicates that Appellants could not be not found guilty if they deceived DWP and ultimately deprived it of budgetary funds, but sought direct payment only from the City. A defendant may be guilty of fraud where the deceived party is indirectly deprived of money or property as a result of the fraud. *See United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010) (affirming wire fraud conviction where defendants deceived Microsoft but were paid for fraudulently discounted Microsoft goods by third parties); *United States v. Bonallo*, 858 F.2d 1427, 1432–34 (9th Cir. 1988) (affirming bank fraud conviction where a bank employee stole funds from customer accounts and deceiving the bank as to the activity, ultimately harming the bank when it reimbursed the customers).

10

### 2. Sugarman's Guilty Plea

Stodder contends that the guilty plea of Steven Sugarman, who worked at FH prior to Stodder, was improperly used to prove that fraud had occurred at FH. First, Stodder argues that the district court erred in rejecting the wording of his proposed jury instruction regarding accomplice testimony. "A defendant, however, is not entitled to an instruction with wording of his own choosing." *United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010) (citing *United States v. Ferris*, 719 F.2d 1405, 1408 (9th Cir. 1983)). "The 'relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation.'" *Id.* (quoting *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999)).

The district court did not err because the instructions given were adequate to prevent the jury from misusing Sugarman's plea. Contrary to Stodder's claim, the phase "crimes charged" used by the district court does not reasonably suggest that the crimes definitely occurred. Further, the district court made clear that Sugarman's plea could not be used to find the defendants guilty by instructing that the "guilty plea is not evidence against the defendants, and you may consider it only in determining Mr. Sugarman's believability." *See United States v. Shipsey*, 363 F.3d 962, 968 (9th Cir. 2004) ("Where the instruction actually given was legally sufficient, a defendant

11

cannot successfully contend that declining to use his specific formulation was an abuse of discretion.").

Stodder's second argument—that the district court erred in refusing to provide a limiting instruction stating Stodder's testimony was not relevant to him—lacks merit. Upon the objection of Stodder's counsel to a discussion of Sugarman's testimony, Judge Feess "remind[ed] the jury that some of this evidence will only relate to one of the defendants, not to the other." Stodder's counsel did not object to this limiting instruction or offer an additional instruction. Further, the factual record made it clear that Stodder and Sugarman worked at FH during separate time periods. Accordingly, there is no indication that the instructions given were not sufficient to prevent possible prejudice to Stodder, much less seriously affect the fairness of the trial. *See United States v. Marin-Cuevas*, 147 F.3d 889, 892–93 (9th Cir. 1998) ("Because Marin-Cuevas neither objected to the jury instructions at trial nor offered a limiting instruction, the standard of review is plain error"); *United States v. Schales,* 546 F.3d 965, 977 (9th Cir. 2008) (finding that a plain error must affect the defendant's substantial rights and seriously affect the fairness of the trial).

Finally, the prosecution's reference to Sugarman's guilty plea in closing argument—to which Sugarman's counsel did not object—did not constitute plain error. *See United States v. Brown*, 327 F.3d 867, 871 (9th Cir. 2003). In light of

12

Stodder's counsel claim in closing argument that FH employees did not think they were doing anything wrong, the Government's statements were a proper invited response. *See United States v. Young*, 470 U.S. 1, 12–13 (1985). Further, the district court's limiting instructions cured any potential prejudice by clearly limiting the evidentiary use of Sugarman's plea. *See United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir. 2005) ("[R]eversal is appropriate 'only if the prosecutor's improper conduct so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict and deprived [Defendants] of a fair trial.'") (quoting *United States v. Smith*, 962 F.2d 923, 935 (9th Cir. 1992)).

## D. Post-Conviction Motions

### 1. Thompson Memorandum

Relying wholly on *United States v. Stein*, 435 F.Supp.2d 330 (S.D.N.Y. 2006), aff'd, 541 F.3d 130 (2nd Cir. 2008)), Dowie contends that the Government's Thompson Memorandum pressured FH to discontinue paying for his legal defense and thereby violated his Fifth Amendment right to a fair trial and his Sixth Amendment right to counsel. The Thompson Memorandum instructed U.S. Attorneys at the time of Dowie's indictment to evaluate the cooperation of a corporation in part on whether it assisted employees to avoid prosecution. Based on the conduct of several U.S. Attorneys in applying this instruction, the court in *Stein* found that prior to trial, the

13

Government had violated the Fifth and Sixth Amendment rights of several KPMG employees "by causing KPMG to depart from its prior practice of paying the legal expenses of KPMG personnel in all cases in which they were sued in consequence of their activities on behalf of the firm." *Id.* at 394. The *Stein* court further found this conduct prejudiced the defendants by preventing some from retaining their counsel of choice and limiting the trial preparation of others. *Id.* at 371–72.

The district court did not err in denying Dowie's post-conviction motion to dismiss the indictment on this basis because the facts here are wholly distinguishable from *Stein*. The district court found that FH stopped funding Dowie's legal defense as a result of an adversarial relationship with him—which included Dowie's dismissal and a civil suit for wrongful termination—not the conduct of the Government. Further, the district court noted Dowie maintained his counsel of choice throughout the trial, and there was no indication their defense work was limited in any way. Dowie has failed to identify evidence suggesting these findings were clearly erroneous. Accordingly, there is no basis upon which to find either state action or prejudice to support a violation of Dowie's constitutional rights. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999); *United States v. Cronic*, 466 U.S. 648, 658 (1984); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872–73 (1982).

14

### 2. Dowie's Sentence

Dowie appeals his sentence of forty-two months in custody, arguing that the district court miscalculated the Sentencing Guidelines range and that the sentence was substantively unreasonable. First, Dowie contends that the district court erred in adopting the Government's calculation of victim loss exceeding $400,000. *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2B1.1(b)(1)(H). Dowie argues the Government's loss calculation of $522,018 was inherently unreliable because it presumed write-ups were fraudulent if there was no justification for them.

The district court, however, "need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 cmt. n.3(C); *see also United States v. King*, 257 F.3d 1013, 1025 (9th Cir. 2001) (approving the use of estimated losses in light of "the difficulty inherent in calculating loss caused by a mail fraud scheme"). Based on the extensive evidence that the write-ups in question were regularly made without a legitimate reason, the Government's determination regarding these sums was supported where there was no other explanation for the increase. *See United States v. Rutgard*, 116 F.3d 1270, 1293–94 (9th Cir. 1997) ("Under the Guidelines, loss generally need only be established by a preponderance of evidence, not beyond reasonable doubt."). The Government provided a detailed examination of the write-ups at issue, which the district court found "conservative" in its calculations. Accordingly, the loss

15

calculation did not constitute the type of "global estimate" that has been rejected in other cases. *See id.* at 1294. Therefore, the district court did not err in adopting this calculation of loss and determining the Guidelines range accordingly under § 2B1.1(b)(1)(H).

The district also did not err in applying a two-level sentencing enhancement for Dowie's abuse of a position of trust. *See* U.S.S.G. § 3B1.3. Dowie was the general manager of FH's Los Angeles office, with managerial authority over the relevant client bills, and the discretion to determine which charges would be included. The affected clients testified that they relied on FH's management to provide an accurate record of activity in order to be able to assess the work. Dowie's abuse of his managerial position to provide fraudulent statements to these clients supports the application of the enhancement under § 3B1.3. *See United States v. Contreras*, 581 F.3d 1163, 1168 n.5 (9th Cir. 2009) (noting that the enhancement is appropriate if the defendant has "professional or managerial discretion," such that the defendant "because of his or her special knowledge, expertise, or managerial authority, is trusted to exercise substantial discretionary judgment that is ordinarily given considerable deference"), adopted in relevant part and vacated in part on other grounds, 593 F.3d 1135 (9th Cir. 2010) (en banc) (per curiam). Further, proper application of the abuse of a position of trust enhancement in addition to a leadership enhancement under §

3B1.1 does not constitute impermissible double counting. *See* U.S.S.G. § 3B1.3 ("If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 [which includes leadership enhancements].");

*United States v. Thomas*, 510 F.3d 714, 725 (7th Cir. 2007) (finding that "[a]pplication of both [enhancements] cannot be considered double counting as long as each is warranted.").

Finally, Dowie's forty-two month sentence was not substantively unreasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Based on a Criminal History Category of I and a total offense level of 27, the Guidelines range for Dowie's sentence was 70 to 80 months. U.S.S.G., Ch. 5, pt. A (Sentencing Table). The district court fully addressed the relevant sentencing factors under 18 U.S.C. § 3553(a), finding Dowie's lack of criminal history and prior good acts as a significant mitigating factors. Noting the offense to have been serious and calculated, however, the district court found a forty-two month custodial sentence was warranted, stating that Dowie was the most culpable of the conspirators. Because Dowie's sentence is substantially below the low end of the Guidelines range, we do not find it be substantively unreasonable given the district court's findings related to the § 3553(a) factors. *See United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005) ("It is hard to conceive of below-range sentences that would be unreasonably high.").

### 3. Denial of Investigation Funding

Stodder also appeals the district court's denial of funding under the Criminal Justice Act ("CJA") for an investigator to examine a potential link between Monique Moret's cooperation with the Government in this case and the Government's decision not to indict her father, Lou Moret, in a separate matter. Stodder has failed to present clear and convincing evidence of prejudice resulting from this denial of funds. *See United States v. Chase*, 499 F.3d 1061, 1069 (9th Cir. 2007). Even if the investigation were to establish the alleged influence on Moret's testimony, the evidence would only be impeaching and insufficient to warrant a new trial. *See United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005). Further, as the district court noted, this impeachment would be largely cumulative because defendants argued at trial that Monique Moret had an improper motive to testify against the defendants on the basis of her own immunity agreement. Accordingly, the district court did not abuse its discretion in denying Stodder's request for investigation funding. *See Chase*, 499 F.3d at 1065.

AFFIRMED

***U.S. v. Dowie***, **Case No. 07-50069**

***U.S. v. Stodder***, **Case No. 07-50072**

**Rawlinson, Circuit Judge, concurring:**

I concur in the result.