**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Vatchagan PETROSIAN, Defendant–
Appellant.**

**No. 96–50120.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1996.

Decided Oct. 15, 1997.

Dennis J. Landin, Deputy Federal Public Defender, Los Angeles, California, for defendant-appellant.

Lawrence S. Middleton, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before: BROWNING, THOMPSON, and THOMAS, Circuit Judges.

PER CURIAM.

Vatchagan Petrosian appeals his counterfeit trafficking, mail fraud, and conspiracy convictions. We affirm.

I.

Petrosian and two associates purchased genuine Coca–Cola bottles, filled them with a cola-like carbonated beverage that was not Coca–Cola, and told purchasers the beverage was Coca–Cola. Petrosian was charged with violating 18 U.S.C. § 2320(a), which provides: "Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services shall" be criminally liable. Petrosian asserts that the district court erred in instructing the jury that "[t]he term 'counterfeit mark' includes genuine trademarks, affixed to packaging containing products not made by, but sold as products of the owner of the registered trademark."[1]

---

[1]. Whether a jury instruction misstates an element of a statutory crime is a question of law that we review de novo. *United States v. Tagalicud,* 84 F.3d 1180, 1183 (9th Cir.1996).

Section 2320(d) defines a counterfeit mark as:

> (A) a spurious mark—
>
> (i) that is used in connection with trafficking in goods or services;
>
> (ii) that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and
>
> (iii) the use of which is likely to cause confusion, to cause mistake, or to deceive....

18 U.S.C. § 2320(d)(1).

▮ The district court's jury instruction was consistent with section 2320. When a genuine trademark is affixed to a counterfeit product, it becomes a spurious mark. A "spurious" mark is one that is false or inauthentic. *See* Webster's Third New International Dictionary 2212 (1961); *see also* Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. 31673, 31675 (1984) ("As [an earlier] Senate bill indicated, 'spurious' means 'not genuine or authentic.'"). A trademark is "any word, name, symbol, or device, or any combination thereof[ ] used by a person ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods...." 15 U.S.C. § 1127. The Coca–Cola mark became spurious when Petrosian affixed it to the counterfeit cola because the mark falsely indicated that Coca–Cola was the source of the beverage in the bottles and falsely identified the beverage in the bottles as Coca–Cola.

Obviously, this spurious Coca–Cola mark was "identical with or substantially indistinguishable from" the registered Coca–Cola mark, as section 2320 requires. The spurious mark was also likely to cause confusion because consumers were likely to assume the mark indicated Coca–Cola was the source of the beverage inside the bottle.

This reading of section 2320 comports with the legislative history. Congress clearly intended to curb the trafficking of counterfeit goods and indicated no intention to exempt defendants who trafficked counterfeit goods under a genuine trademark. *See* S.Rep. No. 98–526, at 5 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3627, 3631 ("To help stem ... an 'epidemic' of commercial counterfeiting ..., S. 875 provides for stiff criminal penalties for those who intentionally traffic in goods or services knowing them to be counterfeit."); Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. at 31673 ("The Senate and House bills both aimed at accomplishing three primary changes in the law: [including] creation of criminal penalties for intentionally dealing in materials that one knows to be counterfeit....").

Further support for this reading is found in opinions holding defendants civilly liable under the Lanham Act for affixing genuine marks to counterfeit products. *See, e.g., Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.,* 106 F.3d 894, 899–900 (9th Cir.1997); *General Elec. Co. v. Speicher,* 877 F.2d 531, 534 (7th Cir.1989).[2] The definition of the term "counterfeit mark" in the Lanham Act is nearly identical to the definition in section 2320, suggesting that Congress intended to criminalize all of the conduct for which an individual may be civilly liable. *See* 15 U.S.C. §§ 1116(d), 1127.

## II.

▮ Petrosian asserts the district court abused its discretion by denying his requests to testify without an interpreter.[3] After observing Petrosian's attempts to testify in En-

---

**2.** The *General Electric* opinion stated that a cursory examination of the Lanham Act "might" suggest that a genuine trademark affixed to counterfeit goods was not a counterfeit mark. However, the court concluded that there was "no difference, so far as the objectives of [the Lanham Act] are concerned, between doing this and making a reproduction of a [genuine] trademark." *General Elec. Co.,* 877 F.2d at 534. The court reasoned that "the purpose of trademark law is not to guarantee genuine trademarks but to guarantee that every item sold under a trademark is the genuine trademarked product, not a substitute." *Id.*

**3.** We review for abuse of discretion the district court's determination that the defendant needed an interpreter and the court's decision as to the manner in which to protect the defendant's right to testify on his own behalf. *See United States v. Mayans,* 17 F.3d 1174, 1179, 1181 (9th Cir. 1994).

glish and hearing him admit he "probably [could] not" testify in English and might not understand questions posed in English, the district court determined that Petrosian's English testimony would not be reliable. A district court has a legitimate interest in excluding unreliable evidence even if the exclusion impinges on a defendant's right to testify on his own behalf.[4] *See Rock v. Arkansas,* 483 U.S. 44, 61, 107 S.Ct. 2704, 2713, 97 L.Ed.2d 37 (1987).

Petrosian was not deprived of his right to take the stand and testify on his own behalf. He told his own story. The interpreter was not a witness who testified about his independent recollection of the events at issue; he simply related Petrosian's testimony verbatim. Petrosian was afforded the opportunity to convey his sincerity to the jury by his physical reaction as the interpreter repeated questions and by the tone of his voice and his facial expression as he responded.

AFFIRMED.

---

4. Petrosian argues that he waived his right to an interpreter. However, to be effective such a waiver must be approved by the district court. *See* 28 U.S.C. § 1827(f)(1). The court may refuse a waiver if it has a sound ground for doing so. *See United States v. Huang,* 960 F.2d 1128, 1136 (2d Cir.1992). Avoidance of unreliable testimony is a sound ground for refusing a waiver.