**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joey SANTILLAN, Defendant–
Appellant.**

**No. 99–50773.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2000

Filed March 14, 2001

Mayra Garcia, Federal Defenders of San Diego, Inc., San Diego, California, for the appellant.

Gregory A. Vega, United States Attorney, Anne Kristina Perry, Assistant United States Attorney, San Diego, California, for the appellee.

Before: RYMER, KLEINFELD, and PAEZ, Circuit Judges.

KLEINFELD, Circuit Judge:

Santillan was prosecuted under the Lacey Act for bringing ten baby parrots across the border from Tijuana. His appeal raises, among other issues, a significant question about the *mens rea* needed under the Lacey Act.

### Facts

Santillan was convicted of smuggling[1] and importing wildlife in violation of the

1. *See* 18 U.S.C. § 545.

Lacey Act.[2] Santillan owned a tropical fish store in Southern California. Returning home from a trip to Tijuana, he said he had nothing to declare. But actually, he had with him ten baby parrots packed in three paper bags stuffed under his car seats. When he was asked why he had not declared them, he said that he had had two beers a couple of hours before. He said he had bought the birds for $250 from a boy on Revolution Street in Tijuana, and would probably keep them rather than sell them. He admitted that he knew he was not allowed to bring the birds into the United States, but assumed that all that would happen if he got caught was that the birds would be seized. It turned out that he underestimated the aggressiveness of federal law enforcement on parrot importation. He was indicted and convicted of two felonies and put in jail for ten months.

### Analysis

#### 1. Expert testimony.

Santillan's first argument is that a government witness should not have been allowed to testify that the birds were worth about $500 each wholesale and that the reason for the import restrictions and quarantine requirements was to prevent introduction of diseases that might harm agriculture in the United States. We review challenged admission of evidence for abuse of discretion.[3] But here, we need not decide whether the district court erred in admitting the testimony, because it was harmless.

The government did not need to prove how much the parrots were worth or why importation was restricted. Santillan argues that admission of this evidence was unfairly prejudicial. The prosecutor said

that she wanted the evidence in for several reasons, among them prevention of what she called "jury nullification." No doubt she was concerned that jurors coming to federal court for a felony trial might expect something like the Lindbergh kidnaping, or at least a major narcotics conspiracy, and wonder why their time was taken up for ten baby parrots. But the prosecutor's concern is no more deserving of protection than the defendant's concern that the jury might not take the defense seriously enough, because he could not tell them that smuggling a few parrots into the country meant a felony conviction and substantial jail time.

But we need not decide whether there was error, because if there was, it was harmless.[4] Santillan had admitted all the government needed to convict him. He admitted smuggling the parrots, knowing that it was against the law. The parrots were right there in his car. There was just no way around the evidence that Santillan had in fact smuggled the parrots across the border knowing that he was violating the law. The evidence was overwhelming and uncontradicted.[5]

#### 2. Lacey Act mens rea.

Santillan challenges the sufficiency of the evidence, and argues that the jury instruction was erroneous on the required mental element of the Lacey Act. We review de novo whether the evidence was sufficient[6] and whether a jury instruction misstates the elements of a statutory crime.[7]

The Lacey Act count accused Santillan of importing wildlife in violation of a regulation that required him to complete and

**2.** See 16 U.S.C. § 3372(a)(1), 3373(d)(1)(A).

**3.** See United States v. Cordoba, 104 F.3d 225, 229 (9th Cir.1997); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir.1995).

**4.** See United States v. Ortland, 109 F.3d 539, 544 (9th Cir.1997) (Stating that we will "will find errors in admission of evidence harmless 'unless the reviewing court has grave doubt whether the erroneously admitted evidence

substantially affected the verdict.' ") (internal citation omitted).

**5.** See id. (noting that error is harmless where evidence is overwhelming as to guilt).

**6.** See United States v. Riggins, 40 F.3d 1055, 1057 (9th Cir.1994).

**7.** See United States v. Petrosian, 126 F.3d 1232, 1233 n. 1 (9th Cir.1997).

file a form.[8]  He reads the Act to require proof that he knew about this form requirement.  There was no evidence at all that he knew anything about the form requirement so if he is right about the law, he would be entitled to acquittal on the felony Lacey Act count.  The district judge instructed the jury that all Santillan had to know was that he knew he was importing wildlife and also knew that the wildlife was "possessed" in violation of law.

The regulation (of which, so far as the evidence shows, Santillan was entirely ignorant) says that wildlife importers must file a "Declaration for Importation or Exportation of Fish or Wildlife."[9]  The Lacey Act makes it unlawful to "import ... any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or *regulation* of the United States...."[10]

There are three provisions of law involved: (1) the regulation, which requires that wildlife importers file a "Declaration for Importation or Exportation of Fish or Wildlife,"[11]; (2) the provision of the Lacey Act which makes it unlawful to "import ... any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or *regulation* of the United States ...."[12]; and (3) The Lacey Act provision setting out criminal penalties.  The *mens rea* requirement is in the criminal penalty provision.  That statute creates felony penalties for a "person who knowingly imports ... wildlife ... in violation ... of this Act ... knowing that the ... wildlife [was] taken, possessed, transported or sold in violation" of law.[13]

Santillan's argument that the statute required the government to prove that he knew about the regulation is an interpretation of the phrase "knowing that the wildlife was possessed in violation" of law.  He cites in support an Eleventh Circuit case, *United States v. Miranda.*[14]  But the *Miranda* case is not on point.  The charge there was conspiracy to sell lobster tails that were too short, and the unlawfulness of the lobster tail sales depended on a state law that made it a crime to possess lobster tails below a certain size.  (The Lacey Act makes federal felonies of many state fish and wildlife misdemeanors, where the fish or wildlife are, among other things, transported or sold in interstate commerce).[15]  The issue before the Eleventh Circuit was whether evidence of a prior violation of the state law was properly admitted to prove knowledge of the state law, which the court said was "necessary to trigger a Lacey Act violation."[16]  The point, though, was not that every law involved has to be known to the violator, but that in that case, the evidence of knowledge of the state lobster tail regulation was admissible.  Without knowledge of the state law against possession of undersized lobster tails, the defendant would not have knowledge that the lobster tails were possessed in violation of any law.

---

8.  *See* 50 C.F.R. § 14.61.

9.  *See* 50 C.F.R. § 14.61 which provides in pertinent part:

> [I]mporters or their agents must file with the Service a completed Declaration for Importation ... of Wildlife ... signed by the importer or the importer's agent, upon the importation of any wildlife at the place where Service clearance under § 14.52 is requested.

10.  16 U.S.C. § 3372(a) (emphasis added).

11.  *See* 50 C.F.R. § 14.61.

12.  16 U.S.C. § 3372(a) (emphasis added).

13.  16 U.S.C. § 3373(d)(1)(A).

14.  835 F.2d 830 (11th Cir.1988).

15.  *See* 16 U.S.C. § 3372(a)(2) which provides that it is unlawful for any person:

> (2) to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce—
> (A) any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law, or
> (B) any plant taken, possessed, transported, or sold in violation of any law or regulation of any State.

*See also, United States v. Romano,* 137 F.3d 677, 678 (1st Cir.1998).

16.  *See Miranda,* 835 F.2d at 832.

That is, he would not have known that there was anything unlawful at all about the lobster tails. In our case, the defendant did know that his possession and importation of the baby parrots was unlawful.

■ We conclude that the Lacey Act does not require knowledge of the particular law violated by the possession or other predicate act, so long as the defendant knows of its unlawfulness. Careful examination of the text of the Lacey Act criminal provision shows that the felony provision requires two levels of knowledge. First, the defendant must be proved to have known that he was importing or exporting fish or wildlife. But that is not enough. Importation of fish or wildlife does not put a person in peril of strict liability for a Lacey Act felony conviction merely because it turns out that there was illegality, unknown to the importer, associated with its taking. To be guilty of the felony, the person must also know "that the fish or wildlife or plants were taken, possessed, transported, or sold in violation of, or in a manner unlawful under, any underlying law, treaty or regulation."[17] This second requirement of knowledge is satisfied if the person knows that the possession, etc. was violative of any law, without regard to whether the person knows which law it violated.

The point of the second knowledge requirement is to assure that the violator is not strictly liable, but instead knows that the fish, wildlife or plants he imported was tainted by illegality. Thus the government does not satisfy its burden of proof merely by establishing that the defendant knew he was importing or exporting wildlife, and, unbeknownst to the defendant, there was some illegality associated with its taking. But it does satisfy its burden of proof if it establishes that the defendant knew that the wildlife was, for example, unlawfully taken, even if the defendant does not know precisely which law or regulation established the illegality of the taking.[18]

■ The *mens rea* provisions in the Lacey Act are important "to separate wrongful conduct from 'otherwise innocent conduct.'"[19] That objective does not require that the violator know all the details of the statutes and regulations that make the conduct unlawful. It suffices that he knows, not only that he is importing or exporting the animals, but also that the animals are tainted by a violation of some law associated with their taking, possession, transportation or sale. Here, there was sufficient evidence to show Santillan knew that what he did was unlawful: the parrots were concealed in the car, and Santillan admitted to the government agents that he knew importing the birds was illegal.

### 3. *Lesser included offense.*

■ Santillan's third argument is that the district judge should have instructed the jury that it could convict him of a lesser included offense. The Lacey Act has a misdemeanor provision, in addition to the felony provision discussed in the previous section.[20] The misdemeanor section criminalizes the same conduct, but instead of requiring knowledge that the fish, wildlife or plants are tainted by some violation of law, requires only that the violator "in the exercise of due care should know" that they are tainted.[21] Thus the

**17.** 16 U.S.C. § 3373(d)(1).

**18.** The Fifth Circuit has construed the statute similarly, though as with the Eleventh Circuit case, it is distinguishable. In a different context from this case, the Fifth Circuit held that the "government need not prove that the appellants knew of the existence of the Lacey Act itself, only that they knew of the illegal nature of the game." *United States v. Todd,* 735 F.2d 146, 151 (5th Cir.1984) (citing S. Rep. No. 123, 97th Cong., 1st Sess. 11, *re-printed in* 1981 U.S.Code Cong. & Admin. News 1748, 1758).

**19.** *Carter v. United States,* 530 U.S. 255, 120 S.Ct. 2159, 2169, 147 L.Ed.2d 203 (2000) (internal citation omitted).

**20.** *See United States v. Hansen–Sturm,* 44 F.3d 793, 794–95 (9th Cir.1995).

**21.** 16 U.S.C. § 3373(d)(2).

misdemeanant must have actual knowledge that he is importing or exporting the animals, etc., but need not know that they were taken or possessed illegally, so long as in the exercise of due care he should know.[22]

■ Santillan requested a lesser included offense instruction. The prosecutor did not object to one. But the court declined to give it because the evidence, in the court's view, did not allow for it. We review this ruling for abuse of discretion.[23]

The evidence established without contradiction that Santillan actually knew that importation of the baby parrots was against federal law, and expected them to be confiscated if he was caught. That evidence left no room for the possibility that he did not know that the birds were possessed against the law, but would have known had he exercised reasonable care.[24] Santillan's argument comes back to the point that he did not know, though perhaps with reasonable care he might have learned, that the federal regulations required him to fill out a form. But as we explain above, the government had to prove only that he knew there was something illegal about possessing the birds, not that he knew precisely what statute or regulation tainted them.

AFFIRMED.

**22.** *See Hansen–Sturm,* 44 F.3d at 794–95 (holding that district court properly gave misdemeanor Lacey Act instruction as a lesser included offense of felony Lacey Act offense).

**23.** *See United States v. Vaandering,* 50 F.3d 696, 703 (9th Cir.1995).

**24.** *See United States v. Parker,* 991 F.2d 1493, 1496 (9th Cir.1993).