**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 01-10068**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellant,**


**VERSUS**


**IBRAHIM ELSAYED HANAFY; MOHAMED M. MOKBEL;**
**SAMER SAMAD QUASSAS; ADEL HISHAM SAADAT,**

**Defendants-Appellees.**


_____

Appeal from the United States District Court
For the Northern District of Texas
_____

August 15, 2002


Before JOLLY, DeMOSS, and PARKER, Circuit Judges.

DeMOSS, Circuit Judge:

Appellees Ibrahim Hanafy, Mohamed Mokbel, Samer Quassas and Adel Saadat were found guilty by a jury of mislabeling and trademark infringement in violation of 18 U.S.C. § 2320 and 21 U.S.C. §§ 331(a), 333(a)(2) and 321(m). The Appellees were also found guilty of money laundering and conspiracy charges flowing from the above offenses. The district court overturned the jury verdict as a matter of law and the United States now appeals.

**BACKGROUND**

The Appellees in this case all owned businesses which purchased individual cans of infant formula and then repackaged the cans into trays for resale to wholesalers. The cans at issue in this case were all originally either bought, or obtained through welfare programs, or stolen by various third parties who were not associated with the Appellees. These cans of formula were then resold by these various third parties to a number of different convenience stores throughout Texas. The convenience stores in turn sold the infant formula to various companies owned by the Appellees. The Appellees then consolidated the cans of baby formula, by manufacturer, into cardboard containers or shipping trays. These trays were designed to extend upward only a few inches so that the cans would remain visible, and these trays resembled the trays used by the manufacturers themselves, including use of the manufacturers' trademarks on the trays. Though not all of the cans in any given shipping tray would necessarily share the same "sell by" date, it is unchallenged that all of the cans were sold within their "sell by" date. Also, though the cans in a tray may have come from different batches of the same manufacturer, all of the cans that were resold were genuine and unadulterated.

The government charged the Appellees with conspiracy under 18 U.S.C. §371, interstate transportation of stolen goods under 18 U.S.C. § 2314, trafficking in goods with counterfeit marks under 18

U.S.C. § 2320, selling misbranded goods with the intent to defraud under 21 U.S.C. §§ 331(a) and 333(a)(2), money laundering under 18 U.S.C. § 1956, and engaging in monetary transactions with criminally derived property under 18 U.S.C. § 1957. At trial, the government attempted to show that some percentage of the baby formula was stolen, that the Appellees knew it was stolen, and that at least $5,000 worth of stolen baby formula had been transported between states to satisfy 18 U.S.C. § 2314. The government also contended that the Appellees counterfeited trademarks on the shipping trays and mislabeled the trays. A jury trial was held, and the Appellees were found guilty on all charges. Following this verdict, the Appellees filed a Fed. R. Crim. P. 29(c) motion for acquittal.

The district court ruled that, despite the jury verdict, the evidence supporting the stolen goods charge was insufficient to meet the $5,000 minimum value threshold required under § 2314. The court also ruled that, as a matter of law, the packaging used by the Appellees did not constitute a counterfeit mark under § 2320 and that the marks on the shipping trays did not constitute "labeling" as a matter of law under 21 U.S.C. §§ 331(a) and 333(a)(2). The court then overturned the remainder of the verdict, which was based on the above predicate offenses, except for the conspiracy count. The court held that because the alleged counterfeit mark and misbranding conduct was not unlawful, they

3

could not support a conviction for conspiracy. However, even though there was insufficient evidence to support the interstate transportation of stolen goods charge, that charge could still form the basis of a conspiracy count. As the district court did not know which of these charges was the basis for the jury's verdict on the conspiracy count, the court granted the Appellees a new trial. *See **Yates v. United States***, 354 U.S. 298, 312 (1957) ("[T]he proper rule to be applied is that which requires a verdict be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.").

The government now appeals the district court's ruling that the packaging trays did not constitute a counterfeit mark and its ruling that the shipping trays did not constitute labeling as a matter of law. The government further argues that, once the trademark issues are reversed, the money laundering and conspiracy charges should be reinstated. The government does not appeal the district court's ruling that the evidence was insufficient to support the stolen goods charge.

## DISCUSSION

### Did the Appellees illegally use counterfeit trademarks?

This court reviews *de novo* a district court's order ruling on a motion for acquittal. **United States v. Restrepo**, 994 F.2d 173, 182 (5th Cir. 1993). Issues of statutory interpretation are also

4

reviewed *de novo*. **United States v. Rasco**, 123 F.3d 593, 597 (5th Cir. 1997).

In order to prove a violation of 18 U.S.C. § 2320(a), the government must establish that: (1) the defendant trafficked or attempted to traffic in goods or services; (2) such trafficking, or the attempt to traffic, was intentional; (3) the defendant used a counterfeit mark on or in connection with such goods or services; and (4) the defendant knew that the mark so used was counterfeit. **United States v. Sultan**, 115 F.3d 321, 325 (5th Cir. 1997). The term "traffic" means to transport, transfer, or otherwise dispose of, to another, as consideration for anything of value, or make or obtain control of with intent so to transport, transfer or dispose of. 18 U.S.C. § 2320(d)(2). "A 'counterfeit mark' is defined as a spurious mark used in connection with trafficking that is identical or indistinguishable from a registered trademark and the use of which is likely to confuse, cause mistake, or deceive." **Sultan**, 115 F.3d at 325 (citing 18 U.S.C. § 2320(d)(1)(A)(I), (ii) and (iii)).

The district court found that the baby formula cans at issue were not counterfeit because the goods themselves were genuine. **United States v. Hanafy**, 124 F.Supp.2d 1016, 1023 (N.D. Tex. 2000). The court noted that there are two exceptions to the use of a mark on allegedly counterfeit goods. *Id.* One is an exception for "gray goods." "Gray goods" are goods that are authentic and that have

5

been obtained from overseas and imported into the United States. *Id.* The second exception is the "authorized use" or "overrun" exception. Under this exception, a counterfeit mark "does not include any mark or designation used in connection with goods or services of which the manufacturer or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation." 18 U.S.C. § 2320(e)(1). Based on these exceptions, the district court noted:

> A common denominator of these two exceptions is that the goods to which the mark is attached were manufactured by, or with the permission of, the owner of the mark--that is, the goods themselves are genuine. That Congress saw fit to exempt "gray market" goods and overruns by a licensee (sold beyond the license period) from criminal liability lends support to an interpretation that § 2320 was intended to prevent trafficking in goods that were similar to but different than the goods normally associated with the mark.

*Hanafy*, 124 F.Supp.2d at 1023-24. The district court also noted that, despite the government's contention that repackaged genuine goods caused confusion, the cases relied upon by the government were all civil cases under the Lanham Act and as such, should not be used as authoritative in interpreting a criminal statute.[1]

---

[1]The district court similarly distinguished attempted comparisons to the Lanham Act for finding that the goods in this case were counterfeit.

The government argues that it was error for the district court to construe § 2320 so narrowly. The government contends that § 2320, by its plain meaning should apply to the instant case. It also argues that an expansive view of what is counterfeit should be used and that the Lanham Act should be instructive on this point, citing **United States v. Petrosian**, 126 F.3d 1232 (9th Cir. 1997).

The basic question before this court is whether a shipping tray that is truthfully marked with the contents it contains, which are genuine articles, is a "counterfeit good" for the purposes of § 2320(a) when the markings include the manufacturer's trademarks and contain no more information than that which is carried on the cans themselves. The Supreme Court has stated, in a civil case, that one who purchases a genuine product in bulk and divides it into smaller portions for sale to consumers may do so as long as the products are marked as having been repackaged. **Prestonettes, Inc. v. Coty**, 264 U.S. 359, 368-69 (1924). The government asserts that this and other civil cases, by analogy, establish that to repackage the cans of baby formula into cardboard trays is essentially the same as attaching a counterfeit mark to genuine goods. *See* **Monsanto Co. v. Haskel Trading, Inc.**, 13 F.Supp.2d 349, 356-58 (E.D.N.Y. 1998) (finding that defendants had violated the Lanham Act when they repackaged small packages of NutraSweet into boxes for resale). The government further cites **Petrosian** to support the idea that the Lanham Act can be used to expand the

7

scope of the terms used in § 2320. In *Petrosian*, however, the defendants had purchased genuine Coca-Cola bottles, filled the bottles with a different cola-like carbonated beverage that was not Coca-Cola, and told purchasers the beverage was Coca-Cola. *Petrosian*, 126 F.3d at 1233. The court held that attaching a genuine mark to a counterfeit good makes the mark counterfeit under § 2320. *Id.* at 1234. That is not the case here, however, where an associated mark is attached to the genuine products it is associated with.

Also, though *Petrosian* indicated that the definitions in the Lanham Act and § 2320 are identical, the Tenth Circuit has rejected such an approach. As the district court pointed out, the Tenth Circuit has found that Lanham Act precedent is of little value in a § 2320 case because the Lanham Act deals with civil liability. *United States v. Giles*, 213 F.3d 1247, 1250 (10th Cir. 2000). The *Giles* court held that because § 2320 is a criminal statute, it must be construed narrowly. *Id.*

We find the district court and Tenth Circuit's reasoning more persuasive. We therefore hold that attaching a mark to trays containing the genuine unadulterated, unexpired products associated with that mark does not give rise to criminal liability under § 2320.

8

<u>Did the Appellees introduce misbranded food articles into interstate commerce?</u>

Under 21 U.S.C. § 331(a), "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded" is prohibited. The government alleges that the failure to indicate that the baby formula was repackaged is the equivalent of misbranding under the statute. The government further alleges that the Appellees conduct was "with the intent to defraud or mislead" which increases the potential criminal penalties. 21 U.S.C. § 333(a)(2). Under 21 U.S.C. § 321(n):

> If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.

"The term 'labeling' means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). From these provisions it is clear, as the district court noted, that § 331 of the Federal Food, Drug, and Cosmetic Act covers not

9

only affirmative representations but material omissions as well. *Hanafy*, 124 F.Supp.2d at 1026.

The government contends that the Appellees omitted any information from the shipping tray markings indicating that the infant formula had been repackaged. The government also asserts that at least one wholesaler testified that he would not have bought the formula had he known it was repackaged.[2] The district court, however, found that an essential element of this claim relied on whether the shipping trays constituted "labeling" under §§ 331(a) and 333(a)(2). After analyzing several cases which held a "common theme" that "labeling" is intended to provide substantial information about the use or benefits of the article, the district court concluded that shipping trays did not constitute "labeling." *Id.* at 1027.

In light of the district court's analysis of Supreme Court and Circuit Court precedents, we are persuaded that the district court was correct in granting the Appellees' motion for acquittal. In *Kordel v. United States*, the Supreme Court was faced with the question of whether the separate shipment of literature saved drugs

---

[2]This witness was the manager of Stanford Trading, a company that acted as a wholesaler as well as a diverter of goods similar to the type of business the Appellees themselves were engaged in. His specific testimony was that he informed the Appellees that he did not have a market for repackaged baby formula. The witness also testified that Stanford Trading did sell repackaged goods, such as toothpaste. The witness was additionally capable of noticing differences in the trays of the Appellees compared to a tray of baby formula directly from the manufacturer, but it is unclear whether such differences were noticed at the time he purchased the baby formula trays from the Appellees.

from being misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act. 335 U.S. 345, 347 (1948). In holding that the drugs were misbranded, the Court noted that because the literature "supplement[ed] or explain[ed]" the drug, it accompanied it. *Id.* at 350 (stating "[i]t is the textual relationship that is significant"). Though this and many of the cases cited by the district court dealt with "labeling" in the sense that a separate label, booklet or pamphlet was involved, *see Hanafy*, 124 F.Supp.2d at 1026-27, this Court can not find, and the government does not point to, any case which breaks from the common thread that the "labeling" be intended to provide substantial information about the use or benefits of the article. We therefore hold that merely identifying the contents of a shipping tray with no more information than that which is already upon the articles themselves does not "explain" or provide "substantial information" so as to rise to the level of "labeling" as contemplated by *Kordel* and its progeny.[3]

Should the remaining money laundering and conspiracy charges be reinstated?

The government asserts that once the counterfeit trademark and misbranding verdicts are reinstated, the laundering and conspiracy charges must also be reinstated. As we affirm the district court's

---

[3]The district court noted that the shipping trays would be removed before the cans would be placed on the shelves for consumers and that the shipping trays in this case contained virtually no information that was not also displayed on the immediate containers themselves.

11

decision on the previous issues, however, these remaining issues are also affirmed.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we conclude that the district court's decision to grant the Appellees' motion for acquittal should remain undisturbed. We also conclude that the district court did not err in granting the Appellees a new trial as to the conspiracy charge. We therefore AFFIRM the district court's decision.

**AFFIRMED.**