*221 WYNN, Circuit Judge,
concurring in part and dissenting in part:
I concur with the majority’s conclusion that the government’s “material alteration” theory is not supported by the plain language of the criminal trademark counterfeiting statute, 18 U.S.C. § 2820. As a result, I also agree that this Court must reverse Defendant Zhao’s conviction on Count 9, which involved a networking switch that the government concedes was manufactured by or for Cisco, and her three money laundering convictions, which were tainted by the material alteration theory. I further concur that the government adduced insufficient evidence to convict Defendant on Count 10 because the government’s evidence at most showed that Defendant Zhao repackaged a genuine Cisco product.
However, I cannot join the majority in affirming Defendant Zhao’s conviction on Count 8, the remaining trademark counterfeiting conviction potentially tainted by the errant material alteration theory. The government and Defendant Zhao presented conflicting evidence regarding whether the products at issue in Count 8 were manufactured by or for Cisco. In affirming that conviction, the majority considered the evidence adduced at trial -in the light most favorable to the government. But such deference is unwarranted because the government argued its legally incorrect alteration theory to the jury and the district court did not provide an adequate instruction to the jury regarding when a product that has its genesis in authorized production can serve as the basis for a trademark counterfeiting conviction. Because we do not know whether the jury properly credited the government’s evidence or improperly credited the government’s errant legal theory, this conviction also should be reversed.
In addition, I write separately to clarify that in resentencing Defendants Zhao and Cone on their conspiracy convictions the district court should not take into account evidence that Defendants altered one other type of Cisco product, which, like the switch at issue in Count 9, the government concedes was manufactured by or for Cisco. I further emphasize that this panel was not tasked with answering, and thus did not decide, whether the repackaging of an altered, but genuine product in a non-deceptive manner violates Section 2320 as a matter of law.
I.
Before explaining why Defendant Zhao’s conviction on Count 8 should be reversed, it is first useful to provide some additional background on Section 2320, the government’s material alteration theory, and the district court’s instruction on the definition of “counterfeit” under Section 2320.
A.
Section 2320(a) makes it unlawful for anyone to “intentionally traffic[] or attempt ] to traffic in goods or services and knowingly use[ ] a counterfeit mark on or in connection with such goods or services-” The statute defines a “counterfeit mark” as a “spurious mark that is used in connection with trafficking in any goods [or] services ... that is identical with, or substantially indistinguishable from, a [registered] mark ... the use of which is likely to cause confusion, to cause mistake, or to deceive-” § 2320(e)(1)(A).
Section 2320 includes two provisions that deal with when the resale of an authentic or genuine good can serve as the basis for a trademark counterfeiting conviction: (1) an “authorized use” exception and (2) a “repackaging,” or “gray goods,” exception. As the majority correctly notes, the authorized use exception excludes from the *222 definition of “counterfeit mark ... any mark ... used in connection with goods or services ... of which the manufacturer or producer was, at the time of the manufacture or production in question, authorized to use the mark” by the trademark holder. § 2320(f)(1). The second exception bars the government from bringing “a criminal cause of action ... for the repackaging of genuine goods or services not intended to deceive or confuse.” § 2320(g). This applies to “gray goods,” which are “goods that are authentic and that have been obtained from overseas and imported into the United States.” United States v. Hanafy, 302 F.3d 485, 488 (5th Cir.2002).
In Hanafy, the Fifth Circuit approvingly quoted its distinct court regarding the relationship between the two exceptions:
A common denominator of these two exceptions is that the goods to which the mark is attached were manufactured by, or with the permission of, the owner of the mark—that is, the goods themselves are genuine. That Congress saw fit to exempt “gray market” goods and [authorized users] from criminal liability lends support to an interpretation that § 2320 was intended to prevent trafficking in goods that were similar to but different than the goods normally associated with the mark.
Id. (quoting United States v. Hanafy, 124 F.Supp.2d 1016, 1023-24 (N.D.Tex.2000)). Thus, the two exceptions jointly indicate that Congress intended generally to exclude from liability under Section 2320 sellers of goods that have their genesis in authorized production. Such an exclusion makes sense—one of the primary rationales for protecting trademarks is that they assist consumers in identifying the source of goods. OBX-Stock, Inc. v. Bicast, Inc., 558 F.3d 334, 339 (4th Cir.2009) (“Trademark law, at a general level ... enabl[es] consumers readily to recognize products and their source and to prevent consumer confusion between products and between sources of products.”). Therefore, it would make little sense for Congress to hold a reseller criminally liable for attaching a mark to a product if the mark correctly identifies the source of the product, and does so in a nondeceptive manner.
B.
Prior to trial, the government submitted a lengthy proposed instruction regarding the definition of “counterfeit,” which provided, in pertinent part:'
[A] defendant cannot purchase genuine products manufactured by or for the registered owner, materially alter those products, and then offer the products for resale as genuine or unaltered products .... Such modifications convert a genuine product into a “counterfeit” product.
J.A. 160. This language was drawn almost entirely from federal district and appellate court decisions in civil actions brought under the trademark counterfeiting provisions in the Lanham Act.
Defendants Zhao and Cone filed a motion in limine seeking an advance ruling on the government’s proposed instruction, arguing that the “material alteration” theory was not supported by the plain language of Section 2320 and had never been applied in criminal cases brought under the statute. Defendants requested that the “material alteration” language not be used, and instead proposed that the instruction state, in pertinent part:
A mark is counterfeit if, and only if ... the challenged mark is spurious, which means false or inauthentic....
Because a counterfeit mark must be false or inauthentic, the definition of counterfeit mark does not include any mark used in connection with goods or applied to labels or packaging if, at the *223 time of manufacture of the goods or production of the labels or packaging, the manufacturer or producer was authorized to use the mark for the type of goods or packaging being made....
The use of an inauthentic mark in the repackaging of genuine goods does not constitute use of a counterfeit mark if it is done without any intent to deceive or confuse as to the authenticity of the goods.
J.A. 132-33. Thus, Defendants’ proposed instruction on the definition of “counterfeit” included both the authorized use and repackaging exceptions.
Noting that a material alteration instruction had not previously been given in a criminal trademark counterfeiting case, the district court expressly rejected the government’s proposed instruction. Instead, the court elected to use the model instruction set out in 3 Hon. Leonard B. Sand et al., Modern Federal Jury Instructions, Instruction 54A-4. In comments on the model instruction, Sand states that “[fjurther instruction may be required when the prosecution involves goods other than the typical knock-off containing a false label.” Sand, supra.
Emphasizing that the parties agreed that this was not the typical “knock-off’ case, at the conclusion of evidence, the government renewed its request that the court instruct the jury on- the material alteration theory. J.A. 2350. Although the government and Defendants agreed that the Sand instruction was inadequate, they could not agree on how it should be modified. Rather than choosing between the government’s and Defendants’ proposed instructions, the district court modified the Sand instruction by quoting Section 2320’s authorized use exception, instructing the jury, in pertinent part:
A counterfeit mark is one that is identical to or substantially indistinguishable -from a registered trademark, the use of which is likely to confuse, cause mistake or deceive the public in general....
I instruct you that as a matter of law, the counterfeiting statute in this case ... does not criminalize any mark or designation used in ... connection with goods or services ... if the manufacturer or producer was at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced.
J.A. 2424, 2427-28. Although it quoted the authorized use exception, the district court did not quote or paraphrase the repackaging exception.
II.
With this background in mind, turn with me to Defendant Zhao’s conviction on Count 8, which covered four network routers bearing Cisco trademarks sold by JDC.
Defendant Zhao contends her conviction must be reversed because the evidence adduced by the government would only be sufficient to support a trademark counterfeiting conviction under the government’s errant material alteration theory, which she contends that the government imper-missibly argued to the jury. In particular, Defendants note that after the district court had instructed the jury and despite the fact that the court had rejected the government’s proposed material alteration instruction, the government still argued in its closing that altering and then reselling a genuine good constitutes illegal trademark counterfeiting for purposes of Section 2320.
For example, during its initial closing argument, the government argued that Defendants engaged in
*224 illegal upgrading.... If they were just buying things in China and selling in the U.S., they could have done that. But they were upgrading them. They were changing them. They were making them new products.
J.A. 2481. Similarly, during its rebuttal argument, the government defined “counterfeit” as follows:
[Defendants] were taking one product and converting it to another. They were making a product in Chantilly, Virginia. That’s not a Cisco product any more. Cisco has standards for its products, quality control. What they did is they took software ... to change what those products did. They don’t know what they actually could do with that software. Maybe it turned it into something unusable. They took that risk and then they packaged it up with a Cisco logo on it and sold it. That’s counterfeit.- Those are not Cisco products. Once you make that alteration, it’s something different.
J.A. 2546. This argument, referred to hereafter as the “alteration theory,” was even broader than the material alteration theory advanced in the government’s proposed jury instruction because it suggested that any alteration, no matter how minor, to a product manufactured by or for a mark holder and sold under the original mark violates Section 2320.
A.
Before reaching Defendant Zhao’s argument that these remarks constitute reversible error, it is first necessary to address whether this issue is properly before us on appeal. Although not disputing the merits of this argument, the majority maintains that Defendant Zhao waived any argument regarding the government’s remarks because she did not timely object below and failed to adequately raise the issue on appeal. I disagree.
At the outset, it is worth noting that the general rule is that the government “waives waiver” by failing to argue on appeal that the defendant did not preserve a given argument. See, e.g., United States v. Quiroz, 22 F.3d 489, 491 (2d Cir.1994); United States v. Beckham, 968 F.2d 47, 54 n. 5 (D.C.Cir.1991). Here, the government did not argue in its briefs or at oral argument that Defendants waived any challenge to the government’s closing remarks by failing to contemporaneously object. Appropriately, the same degree of scrutiny for preserving issues on appeal should be applied to the government as the majority seeks to apply to Defendants. If done so here, then we must conclude that the government waived the waiver argument advanced by the majority.
Nonetheless, regarding whether Defendant Zhao preserved this issue below, the majority correctly notes that the general rule is that “counsel for the defense cannot ... remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial.”. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238-39, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). An appellate court, however, may consider improper remarks by counsel in “exceptional circumstances” such as if the remarks were “obvious, or if they ■ otherwise seriously affect the fairness, integrity, or public reputation of the judicial proceedings.” Id. at 239, 60 S.Ct. 811 (quotation omitted). This Court has indicated that exceptional circumstances exist when comments by the prosecution cause “actual prejudice” to a defendant. United States v. Elmore, 423 F.2d 775, 780 (4th Cir.1970).
Additionally, this Court has held that motions in limine “preserve issues that *225 they raise without any need for renewed objections at trial, just so long as the movant has clearly identified the ruling sought and the court has ruled upon it.” United States v. Williams, 81 F.3d 1321, 1325 (4th Cir.1996). For example, we have held that when a party moves in limine to exclude evidence, the party need not renew its objection when evidence within the scope of the motion is introduced at trial. United States v. Ruhe, 191 F.3d 376, 383 n. 4 (4th Cir.1999); see also Fed.R.Evid. 103(b). Although we have not previously had occasion to apply this rule in the context of motions in limine to preclude the jury from considering a particular legal theory, the same logic applies: Because counsel is restricted to arguing the.law in accordance with the principles espoused in the court’s instructions, United States v. Trujillo, 714 F.2d 102, 106 (11th Cir.1983), if a party moves in limine to bar the jury from considering a particular legal theory and the court rules on that motion, it need not renew its objection when the opposing party argues the legal theory at trial, see Lacy v. CSX Transp. Inc., 205 W.Va. 630, 520 S.E.2d 418, 427 (1999) (“[T]o preserve error with respect to closing arguments by an opponent, a party need not contemporaneously object where the party previously objected to the trial court’s in limine ruling permitting such argument, and the argument subsequently pursued by the opponent reasonably falls within the scope afforded by the court’s ruling.”).
The majority contends that Lacy is in-apposite because in that case the party’s motion in limine to preclude the jury from considering a particular legal theory was unsuccessful, whereas here Defendant Zhao’s motion in limine seeking to exclude the material alteration theory was successful. But it is paradoxical to argue that a party need not contemporaneously object when an opposing party argues a legal theory that was explicitly accepted by the court but must contemporaneously object—at risk of waiver—when an opposing party argues a legal theory that was explicitly rejected by the court. Such a holding would unfairly reward parties that violate a- court’s in limine rulings and is contrary to the policy underlying motions in limine, which is to allow a party to exclude from consideration of the jury a prejudicial matter without drawing attention to the matter by having to contemporaneously object to it. See Jeffrey F. Ghent, Annotation, Modem Status of Rules as to Use of Motion In Limine or Similar Preliminary Motion to Secure Exclusion of Prejudicial Evidence or Reference to Prejudicial Matters, 63 A.L.R.3d 311 § 1(a) (1975).
Here, Defendants did not' contemporaneously object to the government’s statements during its closing. At the same time, Defendants did not “remain silent” or “interpose no objections” to the government’s efforts to get the material alteration theory before the jury. Rather, Defendants repeatedly sought to bar the jury from considering the theory: on two occasions Defendants successfully asked the district court to exclude the government’s proposed material alteration instruction; after the government completed its case in chief, Defendant Cone sought to have the trademarking counterfeiting counts dismissed on grounds that the alteration theory is not supported by the plain language of Section 2320; during their closing argument, Defendants sought to diminish the prejudice from the prosecution’s .statements by arguing that the alteration theory espoused in the government’s closing was contrary to the court’s instruction; and, after the jury rendered its verdict, Defendants sought to have their convictions set aside on grounds that the government impermissibly'argued the alteration theory to the jury. 'Because'the govern *226 ment’s alteration theory was within the scope of Defendants’ motion in limine, which the court definitively ruled upon pri- or to closing arguments, it was unnecessary for Defendants to renew their objection to the theory when, contrary to the court’s ruling, the government argued the errant theory to the jury.
■ The majority maintains that Defendant Zhao’s post-verdict motion for acquittal does not argue that the government’s closing remarks regarding the material alteration theory were improper and a basis for acquittal. To the contrary, as her brief notes, Appellant’s R. Br. at 12, Defendant’s Zhao’s motion explicitly incorporated all arguments made by Defendant Cone regarding the criminal trademark counterfeiting counts in his motion for acquittal. J.A. 2698. And Defendant Cone’s motion for acquittal states:
The government argued, and the jury considered, the theory that Mr. Cone agreed to materially alter Cisco-manufactured equipment, and that this activity constitutes a violation of § 2320. Because the jury considered an impermissible basis for liability under § 2320 and the Court is unable to determine the basis for the jury’s guilty verdict, Mr. Cone must be granted a new trial pursuant to Rule 33.
J.A. 2748-49. Thus, Defendant Zhao did argue in her motion for post-verdict relief that the government’s closing remarks constituted a basis for her acquittal.
But even if Defendants’ repeated efforts to preclude the jury from considering the alteration theory were inadequate to preserve the issue, I believe that this is one of those few cases where exceptional circumstances warrant consideration of the government’s remarks on appeal. The government’s remarks caused Defendant Zhao actual prejudice because they misled the jury into believing that any alteration of a good manufactured by or for a mark holder would be sufficient, by itself, to support a conviction under Section 2320. Yet the majority correctly holds that modifying a genuine good, without modifying the mark on the good, does not run afoul of Section 2320. Ante at 207. Thus, at a minimum, Defendants were prejudiced by the government’s comments because they may have led the jury to incorrectly believe that Defendants could be convicted for modifying a genuine product even if the jury found that Defendants did not alter the mark on the product. See United States v. Mitchell, 1 F.3d 235, 241 (4th Cir.1993) (holding that prosecution’s appeal to improper legal theory during closing argument constitutes prejudicial plain error); United States v. Chong Lam, 677 F.3d 190, 212 (4th Cir.2012) (Floyd, J., dissenting) (stating that a “misstate[ment of] the relevant legal standard” by the prosecution during closing arguments is prejudicial).
The majority also contends that Defendant Zhao failed to adequately raise this issue on appeal, arguing that Zhao has never “raise[d] a claim of error under the material alteration theory as to Count 8” and never argued that the government’s closing remarks constitute reversible error. Ante, at 215-16. But the majority’s position is belied by Defendant Zhao’s briefs.
First, after arguing at length that this Court should reject the government’s material alteration theory by adopting a narrower interpretation of Section 2320, Defendant Zhao’s brief states:
If the Court adopts the narrower interpretation of Section 2320 that the plain language and the rule of lenity require, two conclusions follow. First, the government, failed to prove that Zhao trafficked in counterfeit goods (as charged in Counts 8, 9, and 10). Those convic *227 tions therefore must be reversed, as must the associated money laundering convictions (Counts 27, 28, and 29).
Appellants’ Br. at 36. Moreover, during her discussion of Count 8 in particular, Defendant Zhao asserts that the government’s “evidence showed, at most ... that a serial number programmed inside a genuine Cisco product was altered by someone.” Appellants’ Br. at 37 (emphasis added). Thus, Defendant Zhao repeatedly contended that the government’s errant alteration theory improperly tainted her conviction on Count 8.*
Second, Defendant Zhao’s opening and reply briefs also repeatedly take issue with the government’s closing remarks, referencing them on at least five occasions. Appellants’ Br. at 20-21, 28, 32-33, 39-41; Appellants’ R. Br. at 18-19. In particular, Defendant Zhao summarizes her argument as follows:
The district court rejected the government’s unprecedented [material alteration] instruction. But the court permitted the government to argue a version of the legal theory to the jury, and it denied appellants’ motions challenging the theory and the verdicts that resulted. The district court’s instructional ruling ' and its acceptance of the jury’s verdicts cannot be reconciled.
Appellants’ Br. at 20-21. Therefore, Defendant Zhao unambiguously argued in her opening brief that the government’s closing remarks regarding the alteration theory improperly tainted the jury’s verdict.
In sum, Defendant Zhao repeatedly argued below and on- appeal that both the material alteration theory and the broader alteration theory tainted her trademark counterfeiting convictions because the government improperly argued the theories to the jury.' Indeed, Defendant Zhao’s challenges to the alteration theory were and are the central issue in this case. The government has repeatedly had the opportunity to respond to Defendant Zhao’s objections on the issue, and in each case has argued that the theory is correct and thus her convictions must be affirmed. The majority correctly rejects the government’s arguments and vacates or modifies all of Defendant Zhao’s convictions that were potentially impacted by the government’s errant alteration theory, except for Count 8. Given the centrality of this issue to Defendant’s prosecution and her repeated efforts below and on appeal to raise the issue—regardless of how inartful they may have been—whether the government’s argument of the alteration theory during its closing constitutes a basis for vacating Defendant Zhao’s conviction on Count 8 is properly before us on appeal.
B.
Having established that the government’s comments during closing argument are properly before this Court, turn with me now to the issue of whether these comments warrant reversing Defendant Zhao’s conviction on Count 8.
It is axiomatic that questions of law are the province of the court, whereas issues of fact are reserved for the jury. Georgia *228 v. Brailsford, 3 U.S. 1, 4, 3 Dall. 1, 1 L.Ed. 483 (1794). When underlying legal principles are “undisputed,” counsel is entitled to comment on the law to the jury. United States v. Sawyer, 443 F.2d 712, 714 (D.C.Cir.1971). But if “counsel’s view of the applicable law differs from that of the court, then ... the jury should hear a single statement of law, from the court and not from counsel.” Id. Consequently, “[i]n arguing the law to the jury, counsel is confined to principles that will later be incorporated and charged to the jury.” Trujillo, 714 F.2d at 106.
Although noting that a prosecutor’s instruction on the law during closing arguments lacks “the same force as an instruction from the court,” the Supreme Court has recognized that “prosecutorial misrepresentations may ... have a decisive effect on the jury” and thus can warrant reversing a conviction. Boyde v. California, 494 U.S. 370, 384-85, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). Consequently, the Supreme Court has admonished the government to abstain from securing convictions by misrepresenting facts or the law:
The United States Attorney ... may prosecute with earnestness and vigor— indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); see also Boyde, 494 U.S. at 384, 110 S.Ct. 1190.
A prosecutor’s comments constitute reversible error if they were “(1) improper and (2) prejudicially affected the defendant’s substantial rights so as to deprive the defendant of a fair trial.” Chong Lam, 677 F.3d at 203 (quotation omitted). This Court considers six factors in determining whether a prosecutor’s comments prejudiced a defendant’s “substantial rights”:
(1) the degree to which the prosecutor’s remarks ha[d] a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. We also consider (5) whether the prosecutor’s remarks were invited by improper conduct of defense counsel, and (6) whether curative instructions were given to the jury.
United States v. Lighty, 616 F.3d 321, 361 (4th Cir.2010). In cases in which a prosecutor erroneously instructs the jury on the law, “[t]he determinative question is whether the prosecutor’s remarks cast serious doubt on the correctness of the jury’s verdict.” United States v. Holmes, 406 F.3d 337, 356 (5th Cir.2005) (citation omitted).
C.
Applying this framework to the case at hand, we first must determine whether the government’s remarks were improper. Chong Lam, 677 F.3d at 203. In light of our conclusion that the alteration theory advanced by the government is not cognizable under Section 2320, the government’s closing remarks were an incorrect statement of the law, and thus improper. Mitchell, 1 F.3d at 242 (holding that prosecutor’s appeal to improper legal theory during closing argument constituted plain error). The remarks also were improper because the government is restricted to arguing legal principles included in the jury charge, Trujillo, 714 F.2d at 106, and the district court had repeatedly sustained *229 Defendants’ motions objecting to the material alteration instruction.
The key issue, then, is whether, under the six Lighty factors, the government’s comments prejudiced Defendants’ substantial rights. Here, all of the Lighty factors support reversing Defendant Zhao’s conviction on Count 8. Regarding the first factor, as I explained previously, the government’s remarks misled the jury and prejudiced Defendant Zhao because they incorrectly suggested that she could be convicted for modifying a genuine product even if the jury found that she did not alter the mark on the product. See United States v. Mandel, 862 F.2d 1067, 1073 (4th Cir.1988) (“[W]e hold that in a case in which the jury considers alternate theories of liability, we must reverse the convictions if either theory is an improper basis for punishment.”).
Relatedly, based on the evidence adduced at trial, it is unclear whether there was sufficient competent evidence to convict Defendants on Count 8, as is required by the third Lighty factor. In particular, the government and Defendant Zhao presented conflicting evidence regarding whether the routers were manufactured by or for Cisco. At trial, a Cisco employee described the routers as “counterfeit” for two reasons: (1) they had codes on them that Cisco had assigned to routers with more ports and (2) the packaging for the routers was not Cisco packaging because it included a number of spelling errors. By contrast, an expert witness testifying on behalf of Defendants said that certain unalterable codes “burned into” the routers’ memory indicated that they were manufactured by or for Cisco. J.A. 2207 And the Cisco employee called by the government testified that he did not know whether the routers were manufactured by or for Cisco.
As the majority correctly holds, evidence that a product has been repackaged is not, by itself, sufficient to prove that the product is nongenuine for purposes of Section 2320. Ante, at 212-13; see also Hanafy, 302 F.3d at 489. Moreover, based on the governments closing statement, the jury may have erroneously believed that any alteration of a genuine product—such as changing the codes assigned to the routers—could serve as the basis for a conviction under Section 2320. Consequently, we do not know whether the jury credited the government’s evidence—and thus discredited Defendants’ evidence—that the routers were not manufactured by or for Cisco, and therefore we do not know whether there was sufficient competent evidence to support Defendant Zhao’s conviction. See United States v. Hastings, 134 F.3d 235, 241 (4th Cir.1998) (holding that when a jury may have reached a verdict based on an erroneous legal theory, a reviewing court “must attempt to ascertain what evidence the jury necessarily credited in order to convict the defendant under the instructions given. If that evidence is such that the jury must have convicted the defendant on the legally adequate ground in addition to or instead of the legally inadequate ground, the conviction may be affirmed”).
The second, fourth, and fifth Lighty factors also support vacating the conviction. In particular, the improper appeal to the alteration theory was extensive: not only did the government argue the alteration theory during its closing, the theory also played a key role in the government’s opening argument. The pervasive appeal to the alteration theory throughout the trial and the government’s repeated unsuccessful requests that the district court instruct the jury on that theory also indicate that the government’s remarks were deliberate. See Chong Lam, 677 F.3d at 212 (Floyd, J., dissenting) (“Where, however, a *230 prosecutor continues to make an incorrect statement of the law after the district court has sustained repeated objections to that statement, notifying the prosecutor of the error, the court should, in my opinion, infer some degree of deliberateness.”). Further, there is no evidence that improper conduct by the defense invited the remarks by the government. To the contrary, the defense properly sought to bar the government from arguing the theory through its- successful motion in limine to prohibit the proposed instruction.
Regarding the sixth and final factor, because we presume juries follow their instructions, even in the absence of a curative instruction, a misstatement of law by counsel generally will not warrant overturning a jury verdict if the court’s instruction on the issue correctly stated the controlling law and barred the jury from convicting the defendant based on the erroneous legal theory. See, e.g., Chalmers v. Mitchell, 73 F.3d 1262, 1271 (2d Cir.1996); United States v. Fierro, 38 F.3d 761, 771-72 (5th Cir.1994). Here, the district court did not provide a curative instruction, so the key question is whether the court’s instruction on the definition of “counterfeit” foreclosed the jury from deciding this case based on the government’s erroneous alteration theory.
As noted previously, the district court elected to use the Sand model instruction and modified it by quoting the authorized use exception. But neither the Sand instruction nor the language of the authorized use exception explicitly addresses whether altering a product that has its genesis in authorized production constitutes trademark counterfeiting. Thus, jurors reasonably could have believed that the court’s instruction did not foreclose them from finding Defendant Zhao guilty under the alteration theory improperly argued by the government. Indeed, the district court appears to have believed'that its instruction did not foreclose the jury from relying on the government’s errant alteration theory: though the court elected not to give the government’s proposed material alteration instruction, the district court did embrace the theory in rejecting Defendant Cone’s Rule 29 motion for acquittal. J.A. 2345 (“[T]he presentation of an item as new when it has been altered under a mark is likely to cause confusion and lead the consumer to believe the product was made by the genuine owner of the trademark in the fashion in which it left the factory even though it was not.”).
Nevertheless, the government argues that the court’s instruction was proper and that “the jury was in no way directed to convict if a ‘material alteration’ had been made.” Appellee’s Br. at 25-26. But, despite Defendants’ request, the court refused to instruct the jury on the repackaging exception because the court did not want to embrace a novel legal theory in its instruction. Given the centrality of the alteration theory to the government’s case, the best course of action would have been for the district court to explicitly address the theory in its instructions—as, with the benefit of our holding in this case, future courts should do. At the least, it was incumbent on the court to instruct the jury on all statutory provisions addressing when resale of genuine products can give rise to trademark counterfeiting liability, which it did not do.
In sum, the majority of the Lighty factors favor vacating Defendant Zhao’s conviction on Count 8. Moreover, the government’s uncontradicted alteration argument casts significant doubt on the correctness of the jury’s verdict by making it impossible for us to determine whether the jury properly credited the government’s evidence or improperly credited the government’s errant legal theory—although the *231 jury’s conviction of Defendant Zhao on Count 9, when the government conceded that the product at issue was manufactured by or for Cisco, suggests the jury improperly was doing the latter rather than correctly doing the former.
III.
In addition to disagreeing -with the majority’s decision to affirm Defendant Zhao’s conviction on Count 8,1 write separately to highlight two important points not explicitly addressed by the majority.
First, it is important to clarify that in resentencing Defendants on their conspiracy convictions under the majority’s decision, the district court must not factor into the revised sentences evidence presented at trial that Defendants’ upgraded and resold genuine Cisco PIX firewalls. Sales of the upgraded PIX firewalls constituted a substantial portion of JDC’s sales, exceeding $1,200,000, and therefore factored into Defendants’ sentences. As was the case with the router at issue in Count 9, the government concedes that the PIX firewalls were originally manufactured by or for Cisco. Yet under this Court’s holding, merely upgrading a genuine product does not give rise to liability under Section 2320. Therefore, Defendants cannot be punished for trademark counterfeiting related to the PIX firewalls, and their sentences should be modified accordingly. •"
Second, it should be emphasized that we were not tasked with addressing whether a defendant violates Section 2320 by repackaging a genuine but modified good in a non-deceptive manner. According to the majority, a defendant cannot be held criminally liable under Section 2320(a) for “obtain[ing] a genuine ... product bearing a genuine mark; modifying] the product, but not the mark; then s[elling] the modified product bearing the genuine mark.” Ante, at 207. Although this is a correct statement of law, it should not be réad as holding that a defendant who alters a genuine product and simultaneously alters an associated mark or packaging always violates Section 2320 as a matter of law.
Here, the government did not argue below and does not argue on appeal that the coincidence of altering a genuine product and altering an associated mark gives rise to liability under Section 2320. Rather, the government consistently has argued that altering a genuine product by itself is sufficient to turn the genuine product into a counterfeit—an argument that we reject. Moreover, the government did not introduce evidence that Defendants altered the marks associated with the Cisco products they upgraded. Consequently, we were not tasked with resolving—and therefore did not answer—whether nondeceptively repackaging an altered, genuine product constitutes criminal trademark counterfeiting.
The district court held that as a matter of law altering and then repackaging a genuine good is inherently deceptive. J.A. 2845. But the Fifth Circuit has rejected the argument that the repackaging of genuine goods causes confusion as a matter of law. Hanafy, 302 F.3d at 488. And one can easily envision scenarios in which a defendant nondeceptively alters and resells a genuine product. For example, presumably a computer store can upgrade software on a Cisco router and sell it as “Cisco router with upgraded software”, without running afoul of the statute. Therefore, whether the repackaging of an altered product constitutes trademark counterfeiting remains an open question and must be answered on a case-by-case basis.
IV.
In sum, although the majority properly rejected the government’s material altera *232 tion theory of trademark counterfeiting, it improperly affirmed one of Defendant Zhao’s substantive trademark counterfeiting convictions that was tainted by a version of that theory. Therefore, I respectfully dissent.

 The majority also suggests the Defendant Zhao waived any argument that the alteration theory tainted her conviction on Count 8, when at oral argument her counsel said that the alteration theory "most clearly” impacted Count 1 and Count 9. Ante, at 215-16. But this comment cannot reasonably be interpreted as unambiguously waiving any argument that the theory tainted her conviction on Count 8. And the majority fails to cité, any authority, nor have I been able to find any, supporting the proposition that an appellant can waive an issue through an ambiguous statement made during oral argument, when the issue was raised in the appellant’s briefs, as is the case here.